JUDGE ENGELMAYER

15 CV 3973

NICOLETTI HORNIG & SWEENEY
*Attorneys for Plaintiff*
Wall Street Plaza
88 Pine Street, Seventh Floor
New York, New York 10005-1801
Telephone: (212) 220-3830
(File No.: 0-1173 JFS/CR)

RECEIVED
MAY 22 2015
U.S.D.C. S.D. N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
HYUNDAI MERCHANT MARINE CO., LTD.,

                           Plaintiff,                                    15 Civ.    (   )

    -against-

GREEN VANDERBILT CORP. and
GREEN VANDERBILT GROUP LLC.,

                           Defendants.                                **COMPLAINT**
-----------------------------------------------------------------------x

       Plaintiff HYUNDAI MERCHANT MARINE CO., LTD., by and through its attorneys, Nicoletti Hornig & Sweeney, as and for its Complaint against Defendants GREEN VANDERBILT CORP. and GREEN VANDERBILT GROUP LLC. alleges upon information and belief as follows:

**JURISDICTION AND VENUE**

       1.      This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

       2.      Venue is proper in the United States District Court for the Southern District of New York because Defendants are subject to the court's personal jurisdiction as residents of the State of New York and because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## PARTIES

3.      At  and  during  the  times  hereinafter  mentioned,  Plaintiff  HYUNDAI MERCHANT MARINE CO., LTD (hereinafter "HMM"), a common carrier of containerized cargo by ocean vessel, was and now is a corporation organized and existing under and by virtue of the laws of South Korea with an office and principal place of business at 194 Yulgok-ro, Jongro-gu, Seoul 110-754, Korea.

4.      At  and  during  the  times  hereinafter  mentioned,  Defendant  GREEN VANDERBILT CORP. (hereinafter "GREEN VANDERBILT") was and now is a corporation organized and existing under and by virtue of the laws of the state of New York with an office and principal place of business at 110 Wall Street, Eleventh Floor, New York, New York 10005.

5.      At  and  during  the  times  hereinafter  mentioned,  Defendant  GREEN VANDERBILT GROUP LLC (hereinafter "GVG") was and now is a corporation organized and existing under and by virtue of the laws of the state of New York with an office and principal place of business at 14 Wall Street, Seventieth Floor, New York, New York 10005.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of contract)

6.      On August 30, 2013, GREEN VANDERBILT and/or GVG entered into a contract of carriage with HMM to transport a container load of plastic scraps (the "Cargo") from Detroit, Michigan to Xingang, China.  Attached hereto as Exhibit "1" is a copy of the contract of carriage Sea Waybill No.: HDMUDTXG2893343 ("the Contract") and a copy of the reverse side of the Sea Waybill.  The Cargo was transported in HMM's container No.: HMMU9036766.

7.      On or about September 30, 2013, the Cargo arrived at destination and was subsequently held by the Chinese Customs authorities due to violation of Chinese waste cargo

import regulations.  The Cargo was then confiscated and auctioned by the Chinese Customs authorities.

8.     On or about December 31, 2014, Container No.: HMMU9036766 was finally returned empty to HMM.

9.     Pursuant to HMM's tariff (which is duly incorporated into the Contract), detention charges on Container No.: HMMU9036766 accrued from October 13, 2013 through December 31, 2014 in the total amount of $61,131.80.  Attached hereto as Exhibit "2" is a copy of the applicable HMM's tariff for this shipment and attached hereto as Exhibit "3" is a copy of HMM's "data control" calculating the amount of detention charges.

10.    The Contract also contains terms and conditions that apply to each shipment carried by HMM.  Attached as Exhibit "4" is a copy of HMM's terms and conditions of HMM's bill of lading.

11.    Merchant is defined in HMM's terms and conditions as follows:

> "Merchant" includes the shipper, consignor, consignee, owner, and receiver of the Goods, and the holder of this Bill of Lading, all of whom shall be <u>jointly and severally liable to the Ocean Carrier for the payment of all freight demurrage, damages for detention</u> and for the performance of the obligations of any of them under this Bill of Lading, and the charter party described in the face of this Bill of Lading.

12.    Clause 23 of HMM's terms and conditions further provides that:

> (F) <u>Th e Merchant shall be liable for and shall indemnify the Ocean Carrier against</u>: (1) all duties, taxes, consular fees, and other charges levied on the Goods, and (2) <u>all fines, damages, and losses sustained by the Ocean Carrier in connection with the Goods</u>, including the Merchant's failure to comply with laws and regulations of any public authority in connection with the Goods, or failure to procure consular, board of health, or other certificates to accompany the Goods,  The Merchant shall be liable for return freight and charges on any Goods refused exportation or importation by any public authority.

3

* * *

(I) The Merchant shall be liable for Ocean Carrier attorney fees, expenses and costs to collect any freight or charges under Clause 23.

13.     As shipper of Container No.: HMMU9036766 under the Contract, GREEN VANDERBILT and/or GVG are responsible for all detention charges incurred by the delay in returning the empty container to HMM.

14.     By reason of the premises, GREEN VANDERBILT and/or GVG are liable to HMM in an amount of at least $61,131.80 plus interest.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Attorney's fees, expenses and costs)

15.     HMM repeats and realleges each and every allegation contained in paragraphs 1 to 14 with the same force and effect as if set forth at length herein.

16.     Clause 23 (I) of HMM's Terms and Conditions provides that the Merchant shall be liable for attorney fees, expenses and costs to collect any freight or charges.  See Exhibit "4".

17.     Accordingly, HMM is entitled to an award in this action of its reasonable attorney's fees, expenses and costs.

**WHEREFORE**, Plaintiff HYUNDAI MERCHANT MARINE CO., LTD. prays:

(a)     That process in due form of law may issue against Defendant GREEN VANDERBILT CORP. citing it to appear and answer all and singular the matters aforesaid;

(b)     That judgment be entered in favor of Plaintiff, and against Defendant GREEN VANDERBILT CORP., on the First Cause of Action, in an amount of not less than $61,131.80, together with interest, costs and disbursements of this action;

(c)     That judgment be entered in favor of Plaintiff and against Defendant GREEN VANDERBILT CORP., on the Second Cause of Action, for its reasonable attorney's fees, together with interest, costs and disbursements;

(d)     That process in due form of law may issue against Defendant GREEN VANDERBILT GROUP LLC. citing it to appear and answer all and singular the matters aforesaid;

(e)     That judgment be entered in favor of Plaintiff, and against Defendant GREEN VANDERBILT GROUP LLC., on the First Cause of Action, in an amount of not less than $61,131.80, together with interest, costs and disbursements of this action;

(f)     That judgment be entered in favor of Plaintiff and against Defendant GREEN VANDERBILT GROUP LLC., on the Second Cause of Action, for its reasonable attorney's fees, together with interest, costs and disbursements;

(g)     That this Court will grant to Plaintiff such other, further and different relief as to this Court may seem just and proper.

Dated: New York, New York
       May 2̲2̲, 2015

NICOLETTI HORNIG & SWEENEY
*Attorneys for Plaintiff*
*HYUNDAI MERCHANT MARINE CO., LTD.*

By:     _____
        James F. Sweeney, Esq.
        Wall Street Plaza
        88 Pine Street, Seventh Floor
        New York, New York 10005-1801
        Telephone: (212) 220-3830
        jsweeney@nicolettihornig.com
        (File No.: 00001173 JFS/CR)

T:\CR\ouffet\00\0-1173\COMPLAINT 5-22-15.doc

5

# Exhibit 1



**HYUNDAI** SEA WAYBILL
MERCHANT MARINE CO., LTD.

NON-NEGOTIABLE COPY
Printed via GAUS

| Shipper/Exporter (complete name and address)<br>GREEN VANDERBILT COMPANY<br><br>14 WALL STREET, 17/FL<br>NEW YORK, NY 10005 | Document No.<br>MJLB320247<br><br>Export References<br>004671<br>JL6840 | B/L No HDMU<br>DTXG2893343 |
|---|---|---|
| Consignee (complete name and address)<br>TIANJIN HUA XIN DA INVESTMENT CO.,<br>LTD. TIANJIN ZIYA CIRCULAR ECONOMY<br>INDUSTRIAL AREA<br>XINGANG CHINA (MAINLAND)<br>TEL:022-60987374<br>FAX:022-27632248 | Forwarding Agent References<br><br><br><br>Point and Country of Origin<br>NEW YORK  UNITED STATES OF AMERICA | |
| Notify Party (complete name and address)<br>TIANJIN HUA XIN DA INVESTMENT CO.,<br>LTD. TIANJIN ZIYA CIRCULAR ECONOMY<br>INDUSTRIAL AREA<br>XINGANG CHINA (MAINLAND)<br>TEL:022-60987374<br>FAX:022-27632248 | Domestic Routing/Export Instructions | |

| Pre-Carriage by | Place of Receipt*<br>DETROIT, MI | | |
|---|---|---|---|
| Ocean Vessel/Voyage/Flag<br>HYUNDAI MERCURY V 027W | Port of Loading<br>LOS ANGELES, CA | Onward Inland Routing | |
| Port of Discharge<br>XINGANG, TIANJIN, CHINA | For Transshipment to | Place of Delivery*<br>XINGANG | Final Destination(For the Merchants Ref.) |

### PARTICULARS FURNISHED BY SHIPPER

| Container No./Seal No.<br>Marks and Numbers | No. of Containers<br>or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| HMMU9036766<br>0001201 | "SHIPPER'S LOAD, COUNT & WEIGHT:"<br>1 X 45' CONTAINER SLAC:<br>33 PKGS<br>PLASTIC SCRAPS<br><br>AES ITN: X20130816060735<br><br>FREIGHT PREPAID<br><br>***EXPRESS BILL OF LADING ***<br>"COPY NON-NEGOTIABLE B/L RELEASE PROCEDURES"<br><br>THESE COMMODITIES, TECHNOLOGY OR SOFTWARE WERE EXPORTED FROM<br>THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION | 19,187.1500<br>KGS<br>42,300<br>LBS | 60.0000<br>CBM<br>2,118.8700<br>CFT |
| Total Number of Containers<br>or Packages (in words) | ONE FORTY FIVE FOOT CONTAINER | | | |

| Freight & Charges<br>FREIGHT AS ARRANGED | Rate | Unit | Prepaid | Collect |
|---|---|---|---|---|
| | | | | |

| Declared Value    US $<br>( Optional ) | | Total | | |
|---|---|---|---|---|

| (PACKAGE LIMITATION CLAUSE)<br>Section 4 (5) of U.S. Carriage of Goods by Sea Act-1936:Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the Bill of Lading and additional freight has been paid as required. This declaration, if embodied in the Bill of Lading, shall be prima facie evidence, but shall not be conclusive on the carrier. THIS CLAUSE SHALL APPLY ONLY TO GOODS MOVING TO OR FROM PORTS OF UNITED STATES.<br>IN ACCEPTING THIS BILL OF LADING, the shipper, owner and consignee of the goods, and the holder of the Bill of lading expressly accept and agree to all its stipulations, exceptions and conditions, whether written, stamped, or printed, as fully as if signed by such shipper, owner, consignee and/or holder. No agent is authorized to waive any of the provisions of the clauses. IN WITNESS WHEREOF, the master or agent of the said ship has affirmed to Bill of Lading, all of this tenor and date. ONE of which being accomplished, the others to stand void.<br>*Applicable only when this document is used as an intermodal transport Bill of Lading | Number of Original B(s)/L<br>NIL | On Board Date<br>AUG. 30,2013 |
| | (OBD : 20130830) | |
| | Dated at      CHARLOTTE, NC AUG. 30,2013 | |
| | HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER | |
| | By | |

REGULATIONS.  D          IVERSION CONTRARY TO U.S. LAW IS PROHIBITED.

1. Subject to the terms and conditions set forth herein, the Goods to be carried subject to the terms and conditions provided for in the Carrier's applicable Bill of Lading and its tariff, both of which may be inspected at the Carrier's offices or at those of his authorized agents. Every reference in the Carrier's applicable Bill of Lading and its tariff to the words "Bill(s) of Lading" shall mean "Non-negotiable Waybill(s)" and the terms and conditions thereof shall be read and construed accordingly.

2. This Non-negotiable Waybill shall have effect subject to all the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 16, 1936, or subject to the provisions of any legislation relating to the carriage of goods by sea that incorporates the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated the 25th August, 1924, or to similar effect, including amendments thereto dated Brussel, 23rd February 1968, as may be compulsorily applicable under the laws of the locality where the Waybill is issued or the Goods are to be delivered, as if set forth herein. The defenses and limitations of said Act or such legislation shall apply to the Goods whether carried on or under deck and before the Goods are loaded on and after they are discharged from the vessel and throughout the entire time the Goods are in the actual custody of the Carrier.

3. Neither the Carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods to and or from ports of the United States in an amount exceeding US $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper to the Carrier before shipment and inserted in the Non-negotiable Waybill and extra freight and other charges paid as provided for by the Carrier's tariff.

4. In the event of any claim for loss or damage, the Carrier and the ship shall be discharged from all liability in respect of such loss or damage unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

5. (a) When the Goods are held in the Carrier's custody and only before the Consignee claims their delivery after their arrival at the place of delivery, the Shipper may request the Carrier, on production of the full sets of the Waybill and also by paying to the Carrier such reasonable remuneration as demanded by the Carrier and indemnifying him against all expenses, loss and damage which may be incurred by him by complying with such request to re-route the Goods, and to deliver the Goods to some other person than the Consignee indicated in the Waybill at any stage of the transit as well as to change the place of delivery of the Goods.

   (b) However, the Carrier may refuse the above requests if the requests interfere with his normal or intended operations, or if they are not practically possible to comply with at the time when the requests reach the Carrier, or if damage or substantial inconvenience would be caused to him or to Consignees of other consignments.

   (c) Notwithstanding paragraph 5(a) above, the Shipper may make an irrevocable declaration in writing to the Carrier that the Consignee will make, in place of the Shipper; those requests stipulated in paragraph 5(a) to the Carrier, and if the Carrier thereafter complies with such requests, the Shipper shall indemnify the Carrier from all loss, damage, or consequences whatsoever sustained by the Carrier by his compliance with the requests.

6. Governing Law and Jurisdiction:  The claims arising from or in connection with or relating to this Seaway Bill shall be exclusively governed by law of Korea except otherwise provided in this Seaway Bill.  Any and all action concerning custody or carriage under this Seaway Bill whether based or breach of contract, tort or otherwise shall be brought before the Seoul Civil District Court in Korea.

# Exhibit 2

Date : 2015/05/21

# Basic Tariff

| Area : | | Agent : | HTJ | Nation : | | Location : | |
| Kind : | T | Bound : | I | Mode : | | Eff Date : | 2013/01/01 |
| Dept : | | Trade : | | Line : | | Route : | |
| | | | | | | TMNL : | |
| | | | | | | Depot : | |

| AGT | Nation | Location | Drop Off | Dept Trade | Line Route | B | Kind | EQ TP | W/C | CUR | TMNL | Mode | Effective Term From | To | Day From | Day To | 20 | 40 | 4H | 45 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HTJ | CN | | | | | I | T/DET | DC | C | CNY | | | 2012/09/10 | 2013/12/14 | 1 | 10 | 50.00 | 100.00 | 132.00 | 150.00 |
| | | | | | | | | | | | | | | | 11 | 30 | 100.00 | 200.00 | 240.00 | 300.00 |
| | | | | | | | | | | | | | | | 31 | 50 | 200.00 | 400.00 | 450.00 | 600.00 |
| | | | | | | | | | | | | | | | 51 | 999 | 300.00 | 600.00 | 720.00 | 900.00 |
| | CN | | | | | I | T/DET | FR | C | CNY | | | 2012/09/10 | 2013/12/14 | 1 | 8 | 75.00 | 150.00 | 150.00 | 150.00 |
| | | | | | | | | | | | | | | | 9 | 33 | 150.00 | 300.00 | 300.00 | 300.00 |
| | | | | | | | | | | | | | | | 34 | 50 | 300.00 | 600.00 | 600.00 | 600.00 |
| | | | | | | | | | | | | | | | 51 | 999 | 450.00 | 900.00 | 900.00 | 900.00 |
| | CN | | | | | I | T/DET | HG | C | CNY | | | 2012/09/10 | 2015/05/14 | 1 | 10 | 150.00 | 300.00 | 300.00 | 300.00 |
| | | | | | | | | | | | | | | | 11 | 24 | 300.00 | 450.00 | 450.00 | 450.00 |
| | | | | | | | | | | | | | | | 25 | 50 | 450.00 | 600.00 | 600.00 | 600.00 |
| | | | | | | | | | | | | | | | 51 | 999 | 450.00 | 900.00 | 900.00 | 900.00 |
| | CN | | | | | I | T/DET | OT | C | CNY | | | 2012/09/10 | 2013/12/14 | 1 | 8 | 75.00 | 150.00 | 150.00 | 150.00 |
| | | | | | | | | | | | | | | | 9 | 33 | 150.00 | 300.00 | 300.00 | 300.00 |
| | | | | | | | | | | | | | | | 34 | 50 | 300.00 | 600.00 | 600.00 | 600.00 |
| | | | | | | | | | | | | | | | 51 | 999 | 450.00 | 900.00 | 900.00 | 900.00 |
| | CN | | | | | I | T/DET | RF | C | CNY | | | 2012/09/10 | 2014/10/25 | 1 | 6 | 180.00 | 360.00 | 360.00 | 360.00 |
| | | | | | | | | | | | | | | | 7 | 16 | 300.00 | 600.00 | 600.00 | 600.00 |
| | | | | | | | | | | | | | | | 17 | 999 | 600.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| | | | | | | | | | | | | | | | 0 | 0 | 0.00 | 0.00 | 0.00 | 0.00 |
| | CN | | | | | I | T/DET | SR | C | CNY | | | 2012/09/10 | 2015/05/14 | 1 | 10 | 150.00 | 300.00 | 300.00 | 150.00 |
| | | | | | | | | | | | | | | | 11 | 24 | 300.00 | 450.00 | 450.00 | 300.00 |
| | | | | | | | | | | | | | | | 25 | 50 | 450.00 | 600.00 | 600.00 | 600.00 |
| | | | | | | | | | | | | | | | 51 | 999 | 450.00 | 900.00 | 900.00 | 900.00 |
| | CN | | | | | I | T/DET | TC | C | CNY | | | 2012/09/10 | 2016/12/31 | 1 | 6 | 180.00 | 360.00 | 360.00 | 360.00 |
| | | | | | | | | | | | | | | | 7 | 16 | 300.00 | 600.00 | 600.00 | 600.00 |
| | | | | | | | | | | | | | | | 17 | 999 | 600.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| | | | | | | | | | | | | | | | 0 | 0 | 0.00 | 0.00 | 0.00 | 0.00 |

Rate by Size

1 / 1

# Exhibit 3

# Data Control By B/L

Agent : HTJ   B/L No. : DTXG2893343   Or Container No. :     Admin Agent : HTJ   Location : CNTXG

Kind :   Bound :   Amount = 0 : Y   ReacaulationHistory :

B/L VVD : HHMC0027W   Dpt : UT   Trade : US   Line : PST   Route : PCX   POR : USDFT   POL : USLAX   PVY : CNTXG

VSL / VOY : HDNV088W   As of Date : _ _ _   Expiry Date (DEM) : _ _ _   (DET) : 2013-10-12   Actual Agent : HTJ

Shipper : USHFJ200   GREEN VANDERBILT COMPANY

Consignee : CNTEMP00   TIANJIN HUA XIN DA INVESTMEN

Trucker :

Contract No. : 77447   Commodity(20') :   (40') : 3915000000

Remark :

Total Container : 1   Demurrage Amount : 0.00   Detention Amount : 375,000.00   Transhipment Amount : 0.00   Quayent/Storage Amount : 0.00

| Bound | Mode | Container Number | Type | Size | Reduction | Demurrage | Fnd | Enc/Det/Comb From | Enc/Det/Comb To | Day | Rate | Amount | Crosss No. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| I | T | HMMU9036766 | DC | 45 | | CNY | 14 | 2013/10/13 | 2013/10/22 | 10 | 150.0 | 1,500.0 | |
| I | T | HMMU9036766 | DC | 45 | | CNY | 14 | 2013/10/23 | 2013/11/11 | 20 | 300.0 | 6,000.0 | |
| I | T | HMMU9036766 | DC | 45 | | CNY | 14 | 2013/11/12 | 2013/12/01 | 20 | 600.0 | 12,000.0 | |
| I | T | HMMU9036766 | DC | 45 | | CNY | 14 | 2013/12/02 | 2014/12/31 | 385 | 900.0 | 355,500.0 | |

# Exhibit 4



# CONTAINER BILL OF LADING

Received by the Ocean or Inland Carrier from the Merchant in apparent good order and condition unless otherwise indicated, the Goods, or the containers or packages said to contain the Goods, to be carried subject to all the terms on the face and back of this Bill of Lading, from the place of receipt or the port of loading to the port of discharge or place of delivery, there to be delivered. If required by the Ocean Carrier, this Bill of Lading duly endorsed must be surrendered in exchange for the Goods or delivery order.

## 1.  DEFINITIONS

When used in this Bill of Lading :
(A) "Ocean Carrier" means the ship, her owner, demise charterer and does not include time charterer. It is further understood and agreed that as the line company or agent who has executed the Bill of Lading shall not be under any responsibility arising out of the contract of carriage, nor as carrier nor bailee of the goods, irrespective of any contrary provisions in governing law.
(B) "Inland Carrier" means a carrier (other than the Ocean Carrier) by land, water, or air, participating in Intermodal Transportation of the Goods, whether acting as carrier or bailee.
(C) "Intermodal Transportation" means carriage of the Goods under this Bill of Lading by the Ocean Carrier plus one or more Inland Carriers, from the place of receipt from the Merchant or his agent to the place of delivery to the Merchant or his agent.
(D) "Merchant" includes the shipper, consignor, consignee, owner, and receiver of the Goods, and the holder of this Bill of Lading, all of whom shall be jointly and severally liable to the Ocean Carrier for the payment of all freight, demurrage, damages for detention and for the performance of the obligations of any of them under this Bill of Lading and the charter party described in the face of this Bill of Lading.
(E) "Goods" means the cargo described on the face of this Bill of Lading and, if the cargo is in containers supplied or furnished by or on behalf of the Merchant, include the containers as well.
(F) "Vessel" includes the vessel on the face of this Bill of Lading and any ship, barge, feeder vessel or other means of transport that is substituted, in whole or in part, for that vessel.
(G) "Package" includes containers, vans, trailers, pallets, vehicles, and similar packaged units of any description, but not Goods shipped in bulk.
(H) "Laden on Board" or similar words endorsed on this Bill of Lading means that the Goods have been loaded on board the Vessel or are in the custody of the Ocean Carrier; and in the event of Intermodal Transportation if the originating carrier is an Inland Carrier, means that the Goods have been loaded on board rail cars or other means of inland carriage or are in the custody of a participating railroad or other Inland Carrier.

## 2.  CLAUSE PARAMOUNT

(A) The Hague Rules contained in the international convention for the Unification of Certain Rules relating to Bills of Lading, dated Brussels the 25 August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply but in respect of shipments to which no such enactment is compulsorily applicable, the terms of the said convention shall apply. In trades where the International Brussels Convention 1924 as amended by the protocol signed at Brussels on February 23rd 1968-the Hague-Visby rules-apply compulsorily, the provisions of the respective legislation shall be



considered incorporated in this Bill of Lading.

(B) If this Bill of Lading covers Goods moving from ports of the United States in foreign trade, or if United States law is otherwise compulsorily applicable then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, 46 U.S.C. sec. 1300-1315 as amended      (hereinafter "U.S. COGSA"), the terms of which shall be incorporated herein, and the provisions of U.S. COGSA shall(except as otherwise provided in this Bill of Lading) govern throughout the time when the Goods are in the custody of the Ocean Carrier.

(C) All the terms of provisions and conditions of the Canadian Water Carriage of Goods Act, 1936, and of the rules comprising the schedule thereto are, so far as applicable, to govern the contract contained in this Bill of Lading and the shipowners are to be entitled to the benefit of all privileges, rights and immunities contained in such Act and in the schedule thereto as if the same were herein specifically set out. If anything herein contained be inconsistent with the said provision, it shall to the extent of such inconsistency and no further, be null and void. The carrier shall be under no responsibility whatsoever for loss of or damage to Goods howsoever and wheresoever occurring when such loss or damage arises prior to the loading on and/or subsequent to the discharge from the company's ship

## 3.  LIMITATION OF LIABILITY ; DEFENSES

(A) Nothing in this Bill of Lading shall limit or deprive the Ocean Carrier of any exemption from liability, limitation of liability, or statutory protection authorized by the applicable laws, statutes, or regulations of any country.

(B) The defenses and limits of liability provided in or incorporated by this Bill of Lading, governing law and the relevant charter party shall apply in any action against the Ocean Carrier, whether the action is founded in contract, in tort, or otherwise.

## 4.  SUBCONTRACTING ; EXEMPTIONS AND IMMUNITIES OF SUBCONTRACTORS

(A) "Subcontractor" includes stevedores, longshoremen, lighterers, terminal operators, warehousemen, truckers, agents, and any person, corporation, or other legal entity that performs any of the Ocean Carrier's obligations under this Bill of Lading, and includes the Subcontractor's own Subcontractor.

(B) The Ocean Carrier shall be entitled to subcontract on any terms the whole or any part of the handling, storage, or carriage of the Goods and any duty undertaken by the Ocean Carrier in relation to the Goods.

(C) The Merchant warrants that no claim shall be made against any of the Ocean Carrier's Subcontractors or any Subcontractor's Subcontractor, except Inland Carriers where otherwise appropriate, that imposes or attempts to impose upon any of them or any vessel owned or operated by any of them any liability in connection with the Goods. If any such claim should nevertheless be made, the Merchant shall indemnify the Ocean Carrier against all consequences of claims by any Subcontractor against the Ocean Carrier relating to a claim by the Merchant against the Subcontractor.

(D) Without prejudice to the foregoing, in regard against a Subcontractor regarding handling, storage or carriage of the Goods, every such Subcontractor shall have the benefit of all provisions in this Bill of Lading as if such provisions were expressly for the Subcontractor's benefit.

## 5.  RESPONSIBILITY FOR LOSS OR DAMAGE

(A) Insofar as this Bill of Lading is used for Port-to--Port transportation of the Goods: The Ocean Carrier shall



not be liable for loss of or damage to the Goods caused before loading or after discharge of the Goods. Any indication of final destination on the face of this Bill of Lading is solely for the Merchant's reference, and the Ocean Carrier's responsibility for the Goods shall cease at the time of discharge of the Goods at the port of discharge. The Ocean Carrier, in making arrangements for transportation, storage, or handling before loading or after discharge, acts only as the Merchant's agent and assumes no responsibility therefor. Pre-carriage and on-carriage of the Goods are at the risk and expense of the Merchant.

(B) Insofar as this Bill of Lading is used for Intermodal Transportation of the Goods: The liability of the Ocean Carrier and each Inland Carrier with respect to the Goods shall be limited to the period when it has custody of the Goods, and no carrier, either Ocean or Inland, shall be liable for any loss or damage caused while the Goods are not in its custody. Any claim for loss of or damage to the Goods must be made against the carrier having custody of the Goods when the loss or damage was caused.

(C) If the Merchant establishes that the Ocean Carrier is liable for loss of or damage to or in connection with the Goods, and subject to the provisions of this Bill of Lading, including Article 25;

    (1) With respect to loss or damage caused during the period from the time when the Goods arrived at the sea terminal at the port of loading to the time when they left the sea terminal at the port of discharge, such liability shall be governed by the applicable version of the Hague Rules (as provided in Article 2) and the Ocean Carrier shall have all exemptions from liability, limitations of liability, and protections provided therein.

    (2) Subject to subpart (1) above, with respect to loss or damage caused during the handling, storage, or carriage of the Goods by the Ocean Carrier's Subcontractor, such liability shall be to the extent to which such Subcontractor would have been liable to the Merchant if it had made a direct and separate contract with the Merchant in respect of such handling, storage, or carriage.

(D) If the Merchant establishes that an Inland Carrier is liable for loss of or damage to or in connection with the Goods, such liability shall be to the extent, but not further, to which the Inland Carrier would have been liable to the Merchant if it had made a direct and separate contract with the Merchant in respect to handling, storage, or carriage of the Goods, as applicable.

(E) The Ocean Carrier does not undertake that the Goods will arrive at the port of discharge or place of delivery at any particular time or in time to meet any particular market or use, and the Ocean Carrier shall not be liable for any direct or indirect loss or damage that is caused through delay.

(F) Neither the ocean carrier nor the ship shall be responsible for any loss, damage or delay, directly or indirectly caused by or arising from strikes, lock-outs, labour disturbances, trade disputes, or anything done in contemplation of furtherance thereof whether the owners be parties thereto or not.

## 6.   ROUTE OF TRANSPORT ; TRANSSHIPMENT ; FORWARDING

(A) At the Ocean Carrier's discretion and without notice to the Merchant, the Goods may be carried as a single shipment or as several shipments, by the Vessel named in this Bill of Lading or by any other means of transport by land, water, or air, whether or not owned or operated by the Ocean Carrier, and by any route, whether or not such route is the direct, advertised, or customary route.

(B) The Ocean Carrier may discharge the Goods or any part of them at any port or place for transshipment, store them afloat or ashore, and forward them by any means of transport.

(C) If the Goods cannot be found at the port of discharge or place of delivery, or if they be miscarried, when found they may be forwarded to their intended port of discharge or place of delivery, but the Ocean Carrier shall not be liable for any loss, damage, delay, or depreciation arising from such forwarding.

(D) At the Ocean Carrier's option, and without notice to the Merchant, another ship or ships may be



substituted for the Vessel named in this Bill of Lading whether or not the substituted ship is owned or operated by the Ocean Carrier or arrives or departs before or after the Vessel named in this Bill of Lading.

(E) Actions the Ocean Carrier takes under this Article 6 shall be deemed to be included within the contractual carriage and such actions, or consequences resulting therefrom, shall not be considered a deviation. Should the Ocean Carrier be held liable in respect of such action, the Ocean Carrier shall be entitled to the full benefit of all limitations of liability, rights, and immunities contained in this Bill of Lading.

## 7.  LIBERTIES

(A) In any situation, whether or not existing or anticipated before commencement of the transport, which in the judgment of the Ocean Carrier (including but not limited to the Master and any person charged with the transport or safekeeping of the Goods) has given or is likely to give rise to danger, injury, loss, or delay to the Vessel, any person, the Goods, or any property, or has made or is likely to make it unsafe, impracticable, unlawful, or against the interest of the Ocean Carrier or the Merchant to commence the transport, to continue the transport, to discharge the Goods at the port of discharge, or to deliver the Goods at the place of delivery, the Ocean Carrier shall be entitled:

(1) to unpack the containers or otherwise dispose of the Goods in such manner as the Ocean Carrier may consider advisable, at the risk and expense of the Merchant, and

(2) before the Goods are loaded onto the Vessel or other means of transport, to cancel the contract of carriage without compensation and to require the Merchant to take custody of the Goods and, upon his failure to do so, to store the Goods at a place selected by the Ocean Carrier, at the risk and expense of the Merchant, and

(3) if the Goods are at a place awaiting transshipment, to terminate the transport there and to store the Goods at a place selected by the Ocean Carrier, at the risk and expense of the Merchant, and

(4) if the Goods are on the Vessel or other means of transport, to discharge the Goods or any part of them at a port or place selected by the Ocean Carrier, or to carry them back to the port of loading or place of receipt and there discharge them, at the risk and expense of the Merchant. After any action taken according to this subpart (A), the Ocean Carrier shall be free from any      responsibility for further custody or carriage of the Goods.

(B) If after any action taken according to subpart (A) above the Ocean Carrier makes arrangements to store, transship, or forward the Goods, it shall do so only as agent for and at the risk and expense of the Merchant, without any liability in respect of such agency. The Merchant shall reimburse the Ocean Carrier forthwith upon demand for all extra freight, charges, and expenses incurred for any actions taken according to subpart (A), including delay or expense to the Vessel, and the Ocean Carrier shall have a lien upon the Goods to that extent.

(C) The situations referred to in subpart (A) above shall include, but shall not be limited to, those caused by the existence or apprehension of war, hostilities, riots, civil commotions, or other disturbances; closure of, obstacle in, or danger to any port or seaway; blockage, prohibition, or restriction on commerce or trading; quarantine, sanitary, or other similar regulations or restrictions; strikes, lockouts, or other labor troubles whether partial or general and whether or not involving employees of the Ocean Carrier or its Subcontractors; congestion of port, sea terminal, or similar place; shortage, absence, or obstacles of labor or facilities for loading, discharge, delivery, or other handling of the Goods; epidemics or diseases; bad weather, shallow water, ice, landslip, or other obstacles to navigation or carriage.

(D) The Vessel shall have liberty to call at any port or place, whether in or out of the direct, advertised, or customary route, once or more often and in any order, and to omit calling at any port or place, whether



scheduled or not.

(E) The Vessel shall have liberty, either with or without the Goods on board and either before or after proceeding toward the port of discharge, to adjust compasses and other navigational instruments, make trial trips or tests, dry dock whether laden or not, go to repair yards, shift berths, take on fuel or stores at any port, embark or disembark any person, carry contraband, explosives, munitions, and hazardous cargo, sail without pilots, tow or be towed, and save or attempt to save life or property.

(F) The Ocean Carrier, in addition to all other liberties provided for in Article 7, shall have liberty to comply with orders, directions, regulations, or suggestions as to navigation or the carriage or handling of the Goods or the Vessel, given by any actual or purported government or public authority, or by any committee or person having under the terms of any insurance on the Vessel the right to give such order, direction, regulation, or suggestion.

(G) Actions the Ocean Carrier takes under Article 7 shall be deemed to be included within the contractual carriage and such actions, or consequences resulting therefrom, shall not be considered a deviation. Should the Ocean Carrier be held liable in respect of such action, the Ocean Carrier shall be entitled to the full benefit of all limitations of liability, rights, and immunities contained in this Bill of Lading.

## 8.   DESCRIPTION OF PARTICULARS OF GOODS

Any description on the face of this Bill of Lading of marks, quality, quantity, weight, measure, nature, value, or any other particulars of the Goods is as furnished by the Merchant. The Ocean Carrier shall not be responsible for the accuracy of any such description and is not bound thereby. The Merchant warrants to the Ocean Carrier that the descriptions of particulars that he furnishes are correct, and the Merchant shall indemnify the Ocean Carrier against all loss, damage, expenses, liability, or penalties resulting from inaccuracy of any description of particulars.

## 9.   USE OF CONTAINER

When the Goods are not already packed into a container at the time of receipt by the Ocean or Inland Carrier, the Ocean or Inland Carrier shall be at liberty to pack and carry the Goods in any type of container.

## 10.   OCEAN CARRIER'S CONTAINER

(A) The Merchant assumes full responsibility for and shall indemnify the Ocean Carrier against any loss of or damage to the Ocean Carrier's containers and other equipment if the loss or damage is caused or occurs while in the possession or control of the Merchant, his agents, or other carriers engaged by or on behalf of the Merchant.

(B) The Ocean Carrier shall not be liable for, and the Merchant shall indemnify, defend and hold the Ocean Carrier harmless from, any death of or injuries to persons or loss of or damage to property caused by the Ocean Carrier's container or its contents while in the possession or control of the Merchant, his agents, or other carriers engaged by or on behalf of the Merchant.

## 11.   CONTAINER PACKED BY MERCHANT

If the cargo received by the Ocean or Inland Carrier is in a container packed by or on behalf of the Merchant:

(A) This Bill of Lading is evidence only of the receipt of the number of containers shown on the face of this



Bill of Lading, the condition and particulars of the contents are unknown to the Ocean Carrier, and the Ocean Carrier accepts no responsibility for the accuracy of the description of the condition or particulars of the contents.

(B) The Merchant warrants:

(1) that the stowage of the contents of the containers and the closing and sealing of the containers, are safe and proper, and

(2) that the containers and their contents are suitable for handling and carriage in accordance with the terms of this Bill of Lading, including Article 14. If the Merchant breaches any of these warranties, the Merchant and not the Ocean Carrier shall be responsible for, and the Merchant shall indemnify and hold the Ocean Carrier harmless from, any resulting loss or damage to persons or property (including but not limited to the Vessel and the Goods).

(C) The Merchant shall inspect each container before using it, and the Merchant represents that the container is in sound and suitable condition for the transport contracted for in this Bill of Lading. The Ocean Carrier shall have no liability for loss of or damage to the Goods arising out of the unsuitability of the container if the unsuitability would have been apparent upon reasonable inspection by the Merchant at or before the time of packing the container.

(D) If the container is delivered by the Ocean Carrier with seals intact, such delivery shall be deemed to be full and complete performance of the Ocean carrier's obligations under this Bill of Lading, and the Ocean Carrier shall not be liable for any loss of or damage to the contents of the container.

(E) The Ocean and Inland Carrier shall have the right to open any container, whether packed by the Merchant or not, and to inspect its contents, without notice to the Merchant, at such time and place as the Ocean or Inland Carrier may deem necessary, and at the risk and expense of the Merchant.

(F) If any seal on a container is broken by Customs or other authority for inspection of its contents, the Ocean Carrier shall not be liable for any resulting loss, damage, or expense.

(G) Containers stuffed and sealed by the Merchant prior to delivery to and receipt by the Ocean or Inland Carrier. All statements on this Bill of Lading relating to the contents of the containers, including marks and numbers, number and kind of packages, description, quantity, quality, weight, measure, nature, kind, value or any other particulars are furnished by the Merchant and have not been checked by the Ocean or Inland Carrier. The Ocean or Inland Carrier does not have facilities to weigh sealed containers at the load port and has neither inspected the contents of, nor weighed the containers. Any reference in this Bill of Lading to Shipped on Board or Clean on Board relates solely to the containers and not to the contents thereof. This Bill of Lading shall be subject to Section 101 of the U.S. Federal Bills of Lading Act No. 49 U.S.C.(the Pomerene Bills of Lading Act) and it is agreed that the Ocean or Inland Carrier is entitled to that Section's full protection for the entire period the goods are in the custody of    the   carrier   including pre-loading and post-discharge periods.

## 12.   SPECIAL CARRIAGE OR CONTAINER

(A) The Ocean Carrier does not undertake to carry or store the Goods in refrigerated, heated, insulated, ventilated, or any other special hold or container or to carry or store any special container packed by or on behalf of the Merchant, and the Ocean Carrier will treat such Goods or container only as ordinary Goods or dry container unless:

(1) special arrangements for the carriage or storage of such Goods or container have been agreed to in writing between the Ocean Carrier and the Merchant,

(2) such special arrangements are noted on the face of this Bill of Lading, and



(3) special freight as required has been paid.

(B) The Ocean Carrier shall not be liable for any loss of or damage to Goods in a special hold, or in a special container supplied by the Ocean Carrier, arising from latent defects, breakdown, or stoppage of the refrigerating or heating machinery, insulation, ship's plant, or other such apparatus of the Vessel or container, provided that the Ocean Carrier before and at the beginning of the transport has exercised due diligence to maintain the special hold or container.

(C) The Ocean Carrier shall not be responsible for the function of a special container supplied by or on behalf of the Merchant.

(D) If the Goods have been packed into a refrigerated container by the Ocean or Inland Carrier, and the particular temperature range requested by the Merchant is inserted on this Bill of Lading, the Ocean Carrier will set the thermostatic controls within the requested temperature range but does not guarantee the maintenance of such temperature inside the container.

(E) If the cargo received by the Ocean or Inland Carrier is in a refrigerated container packed by or on behalf of the Merchant, it is the obligation of the Merchant to properly stow the contents and set the thermostatic controls. The Ocean Carrier shall not be liable for any loss of or damage to the Goods resulting from the Merchant's failure in such obligation, and the Ocean Carrier does not guarantee the maintenance of the intended temperature inside the container.

## 13.  DANGEROUS GOODS, CONTRABAND AND ANTI-DRUG

(A) The Ocean Carrier will carry Goods of an explosive, inflammable, radioactive, corrosive, damaging, poisonous, or dangerous nature only upon the Ocean Carrier's approval of a written application by the merchant prior to the carriage of such Goods. Such application must accurately state the name, nature, and classification of the Goods, as well as how they are dangerous and the method of rendering them innocuous, together with the full names and addresses of the shipper and the consignee.

(B) The Merchant shall distinctly and permanently mark the nature and danger of such Goods on the outside of the package or container containing the Goods.

(C) The Merchant shall submit all documents or certificates in connection with such Goods required by any applicable statute or regulation, or by the Ocean Carrier.

(D) Whenever it is discovered that the Goods have been received by the Ocean or Inland Carrier without compliance with subparts (A), (B) or (C) above, or the Goods are found to be contraband or prohibited by any law or regulation, the Ocean Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard, discharged, or otherwise disposed of, at the Ocean Carrier's discretion and without compensation to the Merchant, and the Merchant shall be liable for and shall indemnify the Ocean Carrier against any loss, damage, or liability including loss of freight, and any other expense directly or indirectly arising out of the custody or carriage of such Goods.

(E) The Ocean Carrier may exercise the rights conferred upon it under subpart (D) whenever Goods received in compliance with subparts (A), (B), and (C) above have become dangerous, even if not dangerous when received by the Ocean Carrier.

(F) The Ocean Carrier shall not be liable for, and the Merchant shall indemnify, defend and hold the Ocean Carrier harmless from, any death of or injuries to persons or loss of or damage to the vessel, cargo or other property which may arise from the dangerous nature of the Goods.

(G) In pursuance of the provisions of the U.S. Anti Drug Abuse Act 1986, or any re-enactment thereof, the carrier warrants that they will exercise the highest degree of care and diligence in preventing unmanifested narcotic drugs and marijuana being loaded or concealed on board the Vessel. The



Merchant shall remain responsible for and indemnify the carrier against all time lost and all expenses incurred, including fines, in the event that unmanifested narcotic drugs and marijuana are found in the possession or effects of cargo or package.

**14.   STOWAGE UNDER AND ON DECK**

(A) Goods in containers or vans, or on trailers or chassis, may be carried under deck or on deck. When such Goods are carried on deck the Ocean Carrier shall not be required to mark any statement of "on deck stowage" on the face of this Bill of Lading, any custom to the contrary notwithstanding. Such on deck carriage shall not be considered a deviation.

(B) Goods stowed in poop, forecastle, deck house, shelter deck, passenger space, or any other covered-in space, or stowed in a container wherever placed, shall be deemed to be stowed under deck for all purposes including general average.

(C) Lumber, earth moving equipment, and all other Goods customarily or reasonably carried on deck may at the Ocean Carrier's option be carried on deck without notice to the Merchant and without liability of the Ocean Carrier for the risks inherent in or incident to such carriage.   When such Goods are carried on deck the Ocean Carrier shall not be required to mark any statement of "on deck stowage" on the face of this Bill of Lading, any custom to the contrary notwithstanding. Such on deck carriage shall not be considered a deviation.

(D) In respect of Goods (except in containers) carried on deck and stated on this Bill of Lading to be so carried, all risks of loss or damage from perils inherent in or incident to the custody or carriage of such Goods on deck shall be borne by the Merchant, and in all other respects the Ocean Carrier shall have the benefit of the provisions of the applicable version of the Hague Rules(including U.S. COGSA, notwithstanding Section 1301 (C) thereof) and of the terms of this Bill of Lading.

**15.   LIVE ANIMALS AND PLANTS**

With respect to the custody and carriage of live animals and plants, all risks of loss or damage from perils inherent in or incident to such carriage shall be borne by the Merchant, and in all other respects the Ocean Carrier shall have the benefit of the provisions of the applicable version of the Hague Rules (including U.S. COGSA, notwithstanding Section 1301 (c) thereof) and the terms of this Bill of Lading.

**16.   VALUABLE GOODS**

The Ocean Carrier shall not be liable for loss of or damage to or in connection with precious metals or stones, chemicals, jewelry, currency, writings, negotiable instruments, securities, documents, works of art, heirlooms, or any other valuable Goods, including Goods having particular value only for the Merchant, unless the Merchant has declared the nature and value of the Goods in writing before receipt of the Goods by the Ocean or Inland Carrier, the nature and value of the Goods have been inserted on the face of this Bill of Lading, and additional freight has been paid as required.

**17.   HEAVY LIFT**

(A) The weight of a single piece or package exceeding 2,240 lbs. gross must be declared by the Merchant in writing before receipt by the Ocean or Inland Carrier and must be marked clearly and durably on the



outside of the piece or package.

(B) If the Merchant fails in his obligations under subpart (A): (1) the Ocean Carrier shall not be responsible for any loss of or damage to or in connection with the Goods, (2) the Merchant shall be liable for resulting loss of or damage to any person or property, and (3) the Merchant shall indemnify the Ocean Carrier against any resulting loss, damage, or liability suffered by the Ocean Carrier.

## 18.   DELIVERY BY MARKS

(A) The Ocean Carrier shall not be liable for failure to deliver in accordance with marks unless such marks clearly and durably show upon the Goods, package, or container when the Goods are received by the Ocean or Inland Carrier, together with the names of the port of discharge and place of delivery.

(B) The Merchant warrants that the marks on the Goods, packages, and containers correspond to the marks shown on this Bill of Lading and also in all respects comply with all laws and regulations in force at the port of discharge or place of delivery. The Merchant shall indemnify the Ocean Carrier against all loss, damage or expenses resulting from inaccuracy or incompleteness of the marks.

(C) Goods that cannot be identified as to marks or numbers, cargo sweepings, liquid residue, and any unclaimed Goods not otherwise accounted for may be allocated for the purpose of completing delivery to the various Merchants of Goods of like character in proportion to any apparent shortage, loss of weight, or damage.

## 19.   DELIVERY

(A) Loading shall take place as fast as the Vessel is able to load, by day and-if required by the Ocean Carrier-also by night, Sundays and holidays. If Goods contracted for shipment are not available, when the Vessel is ready to load, the Ocean Carrier is relieved of any obligation to load such Goods, and the Vessel may leave the port without further notice and deadfreight is to be paid. The Ocean Carrier is entitled to land and receive the Goods or to appoint a person or a corporation for the landing and reception of the Goods. Whether appointed by the Ocean Carrier or not, anybody so acting is the Merchant's representative and the Merchant shall pay current charges whether delivery is taken overside or on quay.   The Merchant must be ready to take delivery of the Goods as soon as the Vessel is ready to deliver as fast as she is able to discharge, by day and-if required by the Ocean Carrier-also by night, Sundays and holidays. If the Goods are not taken by the Merchant at the time when the Vessel is entitled to call upon him to take delivery, or if they are not removed alongside the Vessel without delay, the Ocean Carrier shall be at liberty at the sole risk and expense of the Merchant to enter the Goods, to move them, to land them on to wharf, quay or into warehouse or to discharge them into craft, bulk, lighters, pack or unpack the container and/or sell them with or without legal authority, and the contract of carriage shall be considered as fulfilled.

(B) The Ocean Carrier may at its discretion deliver the Goods at any time at the Vessel's side or at a customhouse, warehouse, wharf, or any other place at the port of discharge or place of delivery shown on the face of this Bill of Lading.

(C) Delivery shall take place upon discharge.

(D) Delivery may be to the Merchant including his own bonded warehouses, to the Customs or other public authority, and the Ocean Carrier shall have no further responsibility for the Goods.

(E) If the Goods received by the Ocean Carrier are in containers packed by or on behalf of the Merchant:

   (1) The Ocean Carrier shall be responsible only to deliver the total number of containers received. The



Ocean Carrier shall not be required to unpack the containers and deliver their contents.

(2) At the Ocean Carrier's discretion and upon the Merchant's request in writing to the Ocean Carrier at least 3 days before the scheduled date of arrival of the Vessel at the port of discharge, the containers may be unpacked and their contents delivered by the Ocean Carrier in accordance with the written request. In such a case, if the seals of the containers are intact at the time of unpacking, the Ocean Carrier's obligations under this Bill of Lading shall be discharged, the Ocean Carrier shall not be responsible for any loss or damage resulting from such delivery, and the Merchant shall be liable for an appropriate adjustment of the freight and any additional charges incurred.

(F) If the Ocean Carrier for its convenience has packed the Goods into a container, the Ocean Carrier shall not be required to deliver the Goods in the container. At the Ocean Carrier's discretion, and subject to prior arrangement between the Merchant and the Ocean Carrier, the Goods may be delivered to the Merchant in the container, in which case if the container is delivered with its seal intact the Ocean Carrier's obligations under this Bill of Lading shall be discharged, and the Ocean Carrier shall not be responsible for any loss of or damage to the contents of the container.

(G) The ocean Carrier is not responsible to notify, in writing or otherwise, the Merchant or others of the arrival, discharge, or disposition of the Goods, any custom or agreement to the contrary notwithstanding, and notwithstanding any notation on the face of this Bill of Lading that there is a notify party.

## 20.   FIRE

The Ocean Carrier shall not be responsible for any loss of or damage to the Goods arising or resulting from fire, even though before loading or after discharge from the Vessel and whether founded in contract or in tort, unless caused recklessly and with knowledge that such loss would probably result by the Ocean Carrier.

## 21.   GOVERNMENT ORDERS AND CONTINGENCIES

The Ocean Carrier shall have liberty to comply with any orders, directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, discharge, destination, delivery or otherwise howsoever given by any person acting or purporting to act with the authority of any government, international organization or any department thereof, or by any committee or person having, or purporting to have, under the terms of the insurance on the Vessel, the right to give such orders, directions or recommendations. If by reason of or in compliance with, any such orders, directions or recommendations the Vessel does not proceed to the port or ports originally designated, the Vessel may proceed to any other port which the Ocean Carrier or the Master of the Vessel at its discretion may select and there discharge the Goods. If in the opinion of the Ocean Carrier or the Master the performance of the transport is or threatens to be unsafe, unlawful or inadvisable by the imminence or existence of war, warlike operations or hostilities, the container may be devanned and/or the Goods may be discharged at the port of loading or at any other port or place at the Ocean Carrier's or Master's discretion. If on account of actual or threatening epidemics, quarantine, ice, strikes, lock-outs, labour troubles, interdict, congestion, difficulties in loading or discharge the Ocean Carrier or the Master at any time is in doubt as to whether the Vessel can safely and without delay or detention, reach, enter or leave the port of loading or reach or enter the port of discharge or there discharge in the usual manner, or proceed thence on the voyage safely or without delay or detention, the container may be devanned and/or the  Goods may be discharged at the port of loading or at any other port or place at the Ocean Carrier or Master's discretion. In the cases referred to in all the preceeding paragraphs under this Article, the Ocean Carrier may at any time postpone the carriage of any part of the Goods contracted for



herein till some later date or cancel in whole or in part the contract whether before or after this Bill of Lading is issued. The discharge of the Goods and/or their delivery or other disposition pursuant to any provision of this Article shall constitute complete delivery and performance under this contract and the Ocean Carrier shall be freed from any        further responsibility.   In the event of any diversion, delay or detention of the Vessel under such circumstances as provided in this Article and/or any services rendered to the Goods hereunder, the Ocean Carrier shall be entitled to a reasonable extra compensation and shall have a lien on the Goods for such charges.

## 22.  LIEN ON GOODS

(A) The Ocean Carrier shall have a lien on the Goods, which lien shall survive delivery, for all freight, dead freight, demurrage, damages for detention, general average contributions, stevedoring charges, storage, container per diem expenses, and any other sums (including costs and attorney fees for recovering the sums) chargeable to the Merchant under this Bill of Lading, the charter party described in the face of Bill of Lading and any other preliminary contract for custody or carriage of the Goods. The Ocean Carrier may foreclose the lien by selling the Goods, without notice to the Merchant, privately or by public auction. If proceeds of the sale of the Goods fail to cover the amount due and the costs and fees incurred, the Ocean Carrier shall be entitled to recover the deficit from the Merchant.

(B) If the Goods are unclaimed for a reasonable time, or whenever in the Ocean Carrier's opinion the Goods will deteriorate or depreciate, the Ocean Carrier may at its discretion exercise its lien or sell, abandon, or otherwise dispose of such Goods at the risk and expense of the Merchant.

## 23.  FREIGHT AND CHARGES

(A) Freight may be calculated on the basis of the description of particulars furnished by the Merchant, who shall be deemed to have guaranteed to the Ocean Carrier the accuracy of the contents, quantity, weight, measure, value, and other particulars as furnished at the time of receipt of the Goods by the Ocean or Inland Carrier, but the Ocean Carrier for the purpose of ascertaining the actual particulars may open the container or package at any time and at the risk and expense of the Merchant. In case of incorrect declaration of any particular, the Merchant shall be liable to the Ocean Carrier for :
  (1) the balance of freight between the freight charged and that which would have been due had the correct particular been given, plus
  (2) expenses incurred in determining the correct particular, plus
  (3) as liquidated and ascertained damages, an additional sum equal to the correct freight.

(B) Full freight to the place of delivery shall be completely earned upon loading of the Goods, whether the freight is stated or intended to be prepaid or to be collected at destination. The Ocean Carrier shall be entitled to all freight and other charges due hereunder, whether actually paid or not, and to receive and retain such freight and charges regardless whether the Vessel or the Goods be lost, or whether the Ocean Carrier takes any of the liberties allowed in this Bill of Lading. Full freight shall be paid on damaged or unsound Goods.

(C) The payment of freight and charges shall be made in full and in cash without any offset or deduction.

(D) Goods received by the Ocean Carrier cannot be taken away or disposed of by the Merchant except upon the Ocean Carrier's consent and after payment of full freight and charges due under this Bill of Lading.

(E) If the Goods are not available when the Vessel is ready to load, and unless the unavailability arises in the course of Intermodal Transportation and is caused by the failure of the Inland Carrier to perform its



obligations under this Bill of Lading, dead freight shall be paid by the Merchant.

(F) The Merchant shall be liable for and shall indemnify the Ocean Carrier against: (1) all duties, taxes, consular fees, and other charges levied on the Goods, and (2) all fines, damages, and losses sustained by the Ocean Carrier in connection with the Goods, including the Merchant's failure to comply with laws and regulations of any public authority in connection with the Goods, or failure to procure consular, board of health, or other certificates to accompany the Goods. The Merchant shall be liable for return freight and charges on any Goods refused exportation or importation by any public authority.

(G) If in the Ocean Carrier's opinion the Goods are in need of sorting, inspecting, mending, repairing, or reconditioning, or otherwise require protecting or caring for, the Ocean Carrier at its discretion may, by itself or through Subcontractors, and as agent for the Merchant, carry out such work at the risk and expense of the Merchant.

(H) Any party performing forwarding services with respect to the Goods shall be considered to be the agent of the Merchant exclusively, and any payment of freight or charges to such party shall not be considered to be payment to the Ocean Carrier.

(I) The Merchant shall be liable for Ocean Carrier attorney fees, expenses and costs to collect any freight or charges under Clause 23.

(J) The merchant shall be responsible for any additional war risks premium arising from the vessel's call at the named discharge port herein which additional premium shall constitute a charge due hereunder against the Goods pursuant to clause 23.

## 24.   NOTICE OF CLAIM AND TIME FOR SUIT AGAINST OCEAN CARRIER

(A) Unless notice of loss of or damage to the Goods and the general nature of such loss or damage is given in writing to the Ocean Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods or, if the loss or damage is not apparent, within 3 days after delivery, the Goods shall be deemed to have been delivered as described on the face of this Bill of Lading.

(B) The Ocean Carrier shall be discharged from all liability in respect of the Goods, including but not limited to liability for nondelivery, misdelivery, delay, loss, or damage, unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered. Suit shall not be considered to have been "brought" within the time specified unless process shall have been served on and jurisdiction obtained over the Ocean Carrier within such time.

## 25.   LIMITATION OF LIABILITY FOR LOSS OR DAMAGE

(A) Subject to subpart (B) below, for the purpose of determining the extent of the Ocean Carrier's liability for loss of or damage to the Goods, the Merchant agrees that the sound value of the Goods is the Merchant's net invoice cost, plus freight and insurance premium, if paid. The Ocean Carrier shall not be liable for any loss of profit or any consequential loss.

(B) Insofar as loss of or damage to or in connection with the Goods was caused during the part of the custody or carriage to which the applicable version of the Hague Rules applies :

(1) Neither the Ocean Carrier nor the Vessel shall be liable for loss or damage in an amount exceeding the minimum allowable limit per package or unit in the applicable version of the Hague Rules, which when the U.S. COGSA applies is U.S. $500 per package or, in case of Goods not shipped in packages, per customary freight unit, unless the value (and nature) of the Goods higher than this amount has been declared in writing by the Merchant before receipt of the Goods by the Ocean



Carrier and inserted on the face of this Bill of Lading, and extra freight has been paid as required. If the actual value of the Goods per package or unit exceeds such declared value, the value shall nevertheless be deemed to be the declared value, and the Ocean Carrier's liability, if any, shall not exceed the declared value. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value. If the declared value has been knowingly and fraudulently misstated, the Ocean Carrier shall not be liable to pay any amount.

(2) Where the Goods have been packed into a container or unitized into a similar article of transport by or on behalf of the Merchant, it is expressly agreed that the number of such containers or similar articles of transport shall be considered to be the number of packages or units for the purpose of the application of the limitation of liability provided for in this Article 25.

## 26.   GENERAL AVERAGE; NEW JASON CLAUSE

(A)  General average shall be adjusted, stated, and settled at the port or place of the Ocean Carrier's option and according to the York-Antwerp Rules, 1994 and, as to matters not provided for by those Rules, according to the laws and usages of the port or place of adjustment, and in the currency selected by the Ocean Carrier. The general average statement shall be prepared by the adjusters appointed by the Ocean Carrier. Average agreement or bond and such cash deposit as the Ocean Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon, and any other additional securities as the Ocean Carrier may require, shall be furnished by the Merchant to the Ocean Carrier before delivery of the Goods.

(B)  In the event of accident, danger, damage, or disaster before or after commencement of the voyage, resulting from any cause, whether due to negligence or not, for which or for the consequences of which the Ocean Carrier is not responsible by statute, contract, or otherwise, the Goods and the Merchant shall jointly and severally contribute with the Ocean Carrier in general average to the payment of any sacrifices, loss, or expenses of a general average nature that may be or incurred, and shall pay salvage and special charges incurred in respect of the Goods. If a salving ship is owned or operated by the Ocean Carrier, salvage shall be paid for as fully and in the same manner as if such salving ship belonged to strangers.

## 27.   BOTH TO BLAME COLLISION

If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect, or default of the Master, crew, pilot, or agent of the Vessel or Ocean Carrier in the navigation or in the management of the Vessel, the Merchant shall indemnify the Ocean Carrier against all loss or liability incurred directly or indirectly to the other ship or her owners or operators insofar as such loss or liability represents loss of or damage to the Goods or any claim paid or payable to the Merchant by the other ship or her owners or operators and set-off, recouped, or recovered by the other ship or her owners or operators as part of their claim against the Vessel or the Ocean Carrier. The foregoing provisions shall also apply where the owners, operators, or those in charge of any ship or objects other than or in addition to the colliding ships or objects are at fault in respect of a collision, contact, stranding, or other accident.

## 28.   INTERMODAL TRANSPORTATION

(A)  This Bill of Lading may be issued for Intermodal Transportation in any country. When so issued, as



between the Merchant and an Inland Carrier custody and carriage of the Goods by the Inland Carrier are subject to the relevant laws, regulations, tariffs, and Bill of Lading applicable to or issued by the Inland Carrier. Copies of the form of the Inland Carrier's applicable Bill of Lading are available from the Ocean or Inland Carrier upon request.

(B) Claim by the Merchant against an Inland Carrier for loss or damage shall be given, and suit commenced, as provided in the Inland Carrier's applicable Bill of Lading.

## 29.   OCEAN CARRIER'S TARIFF

This Bill of Lading is issued subject to the Ocean Carrier's applicable tariff. Copies of the applicable tariff are obtainable from the Ocean Carrier upon request.

## 30.   GOVERNING LAW AND JURISDICTION

The claims arising from or in connection with or relating to this Bill of Lading shall be exclusively governed by the law of Korea except otherwise provided in this Bill of Lading.   Any and all action concerning custody or carriage under this Bill of Lading whether based on breach of contract, tort or otherwise shall be brought before the Seoul Civil District Court in Korea.

## 31.   SUPERSEDING CLAUSE

All agreement or freight engagements for the shipment of the Goods are superseded by this Bill of Lading.

## 32.   SEVERABILITY OF TERMS

The terms of this Bill of Lading are severable, and if any part of terms is declared invalid or unenforceable, the validity or enforceability of any other part of term shall not be affected.